## JANUARY TERM, 1844.

AUGUSTUS E. ADDISON, administrator, *de bonis non*, of JOSEPH FRAY deceased, *vs.* CHESTER ELDRIDGE.

At any term of the probate court, after the report of the commissioners, appointed to audit the claims against an estate, previously declared insolvent, has been received and approved, it is too late to open it.

AT the October term, 1842, of the probate court of Adams county, Augustus E. Addison filed his petition, stating that he was administrator, *de bonis non*, of the estate of Joseph Fray, deceased, and that said estate had been previously declared insolvent, and commissioners appointed to audit, and allow claims against it; that in the report of the commissioners, which was confirmed by the court at the September term, 1840, a claim was allowed to Chester Eldridge, amounting to $10,679 $\frac{85}{100}$, which was founded on two notes given by said Fray, shortly before his death, to a woman with whom he lived as his wife— but who was the legitimate wife of a man named Whipple, presumed to be still living ; that when Fray gave the notes, he was sick, and in *extremis,* and asserted he was worth the amount of the notes, after paying all his just debts ; that the only consideration for the notes was their living together, and that if the notes were valid, they belong to the husband of said woman, and not to Eldridge ; that said claim was not contested before the commissioners, but why, petitioner did not know, and prayed that the report be re-opened, and referred to referees, &c. The defendant demurred, and the court sustained the demurrer, and dismissed the petition, and the petitioner appealed to this court.

Messrs. *Montgomery & Boyd,* for the appellant.

The petition in this case was founded on the statute, which

Addison *v*. Eldridge.

provides that any creditor, or any executor, who is dissatisfied with the report of the commissioners, may for good cause have the claim referred to referees, whose report being approved shall be final, &c. See proviso, How. & Hutch. 409, 580.

It is contended that the good cause must be shown before the confirmation of the commissioners report, which was not done in this case; but we can find no such rule in the statutes, nor do we know of any rule of law which makes it imperative to apply at any particular period. There is no provision for a confirmation of the report of commissioners. But even if the practice of the court is correct, in making a specific order confirming the report, that does not preclude an administrator from contesting a claim which has been allowed by commissioners, after he has discovered the objections. The administrator who petitions in this case, was appointed the term before he filed his petition. He certainly was not guilty of laches. And it is for the court to determine whether an estate shall be ruined by the negligence of an administrator, and no relief shall be given to those interested, when a subsequent administrator shows the necessary diligence to protect their interest. A case of administration is always in court, from the grant of letters of administration until the allowance of the final settlement, and the court at all times has full jurisdiction to hear the administrator or others, on application to correct any error which may have been committed in the course of administration. And a proceeding in insolvency cannot be properly considered as closed, until an order of distribution among the creditors. Such order has not been made in this case, and consequently the whole matter is open for further action. A report of referees will be final, because the statute says it shall be, but if no order was made approving the report, it would remain subject to exceptions five years. Length of time can make no difference. It requires some legal action on the subject, to bar the administrator's right of reference, and that action must either be prescribed by the statute, or settled rules of practice, both of which are silent on this subject.

In Massachusetts and Maine, where the system of adminis-

tering estates is similar to ours, it has been held that the court should open the commission, to let in creditors to prove their claims, notwithstanding the report had been returned and approved, provided the application was made within eighteen months.

And it has been held in Massachusetts, that a creditor whose claim is ejected by commissioners of insolvency, was not bound to see at the first term, notwithstanding the statute requires that the action shall be commenced as speedily as the same can be done.    *Guild* v. *Hall,* 15 Mass. Rep. 457.

There is very little light to be obtained from other countries, in consequence of the great difference between the systems adopted on this subject, and the court must put their own construction on the statute.

This case differs from the case in 6 How. Rep. 524, *Chewning* v. *Peck,* executor, in the important particular, that in that case, the court had ordered a distribution of the estate among creditors, before the petition for a reference.    And six years had elapsed from the report until the application.

It is a general rule that one party cannot complain of the laches of the other, if he has been equally negligent.    In this case, if Eldridge had moved for an order of distribution, he might, with some propriety, complain of the laches of the administrator, in failing to except; but as he took no step in the cause, he has no right to complain of the negligence of the administrator.

*Quitman* and *McMurran,* for the appellees.

Assuredly, the statute does not warrant such an application after such a lapse of time; and the policy of the law forbids it. We take the same view of this question which the judge of probate did in deciding it, and that is, that the application for a reference must be made at the term of the court to which the report is made, before the court shall have confirmed it and had it recorded.    The statute provides that, notwithstanding the report, a reference may be made, &c.    But there is no further provision, that, notwithstanding the court may have confirmed the

report, and had it recorded, still referees may be appointed.   No. The law makes no such provision, and surely the court will not interpolate and add such a provision ; least of all, in favor of the administrator, when he, or the previous administrator, as in this case, reported the estate insolvent, had the commissioners appointed, and, according to the usual practice, in three months actually filed the claim with the commissioners, for their action. There is no pretence that the former administrator, Sisloff did not know as much of Mr. Eldridge's claim as is known now ; that he did not know of the report of the commissioners when returned to court, and when acted on in court, and, finally, disposed of by the court.   And surely a change of administration is no answer to this.   If a particular claim can thus be attacked after this lapse of time, every one reported on may be attacked, and a reference of each of them now had ; and if it can be done now, it can be done twenty years hence, if the administration shall remain open that long.   The proceedings of a probate court, and reports of commissioners, would be idle, having no serious or valid existence, subject to be set aside at any length of time, without pretending to show the least diligence, but, on the contrary, showing the most supine neglect.

We are satisfied that the court will recognize no such doctrine. The court will apply the same principle that they would to cases of trial at law, and new trials.   After a verdict, a party may obtain a new trial, but if he suffers the term to pass, and judgment to go on the verdict, he comes too late.·  So the same rule applies in regard to an application for a reference to referees under the statute.   The cases are analogous, and no distinction exists

The rule, too, adopted by the court of chancery in regard to reports of commissioners of that court, the party excepting, must file his objections or exceptions, on coming in of the report.   It would be entirely too late, after the report has been confirmed by an interlocutory order, and an application affecting such report, would not be heard if made at a subsequent term. Blaise's Ch. 238.   3 Johns. Ch. Rep. 78.

But the case in 6 How. Rep. 524, *Chewning* v. *Peck*, we consider directly in point, and decisive of the question.

Besides, the administrator, especially, must be cognizant of his own proceedings, and each step of his administration, more than third persons.   3 How. 252, 258.

The doctrine contended for by the opposite counsel, would change the rule of law and justice observed in all courts.   It would favor the supine and discountenance the vigilant, to the great injury of those who attend to their claims; for proof, by lapse of time, might be lost, and difficulties increased, which ought not to be imposed upon the creditor under the circumstances of this case.

Mr. Justice CLAYTON delivered the opinion of the court.

There is but a single point involved in this record; whether, after an estate has been reported insolvent, and commissioners have been appointed to audit the claims, whose report has been made and ratified by the court, it is competent for the court, at a subsequent term, on the application of the administrator, to open the account and submit any of the claims so ratified, to referees, to be passed upon by them.   This point, we regard as settled by previous adjudications of this court.   *Chewning* v. *Peck and wife*, 6 How. 524.   *Smith* v. *Berry*, Opin. Bk. 431. *

It is thus the rule, that any term of the probate court, after the report has been received and approved, it is too late to attempt to open it.   During the term to which the report is made, the court, of course, would have power, upon cause shown, to order a reference, in the manner prescribed by the statute.   H. & H. 410.

*The decree of the probate court is affirmed.*

* *Merritt J. Smith* v. *T. V. Berry*, administrator of N. Touchstone, deceased, is reported in this volume, *supra* 321.